EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jessica Saldaña Torres y otros<br><br>Peticionarios<br><br><br>v.<br><br><br>Municipio Autónomo de San Juan y otros<br><br>Recurridos | 2017 TSPR 155<br><br>198 ____ |

Número del Caso: AC-2016-70


Fecha: 11 de agosto de 2017

Tribunal de Apelaciones:

      Región Judicial de San Juan


Abogado del peticionario:

      Lcdo. Emilio Cancio Bello


Abogados de la parte recurrida:


      Lcda. Alondra Fraga Meléndez
      Lcda. Gretchen Alvarado González


Materia: Responsabilidad civil extracontractual: Comienzo del término prescriptivo que tiene un empleado lesionado para presentar una reclamación por daños y perjuicios contra un tercero responsable.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Jessica Saldaña Torres y otros

      Peticionarios

         v.

                      AC-2016-0070

Municipio Autónomo de San Juan
         y otros

      Recurridos

**EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, a 11 de agosto de 2017.

El recurso ante nuestra consideración nos brinda la oportunidad de determinar desde cuándo comienza y cuándo termina el término prescriptivo de un año para que un obrero o empleado lesionado pueda presentar una demanda sobre daños y perjuicios contra un tercero responsable, al amparo de la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec. 1 *et seq.*, en aquellos casos en los que el Administrador de la Comisión del Fondo del Seguro del Estado (CFSE o el Fondo) decide o no presentar la acción de subrogación que

concede la referida ley. Así, resolvemos que el periodo de un año para instar la causa de acción por daños y perjuicios contra un tercero responsable comienza a transcurrir luego de que advenga final y firme la resolución del Administrador y antes de vencer el año, desde que esta adquirió firmeza.

## I

Según surge del expediente, el 12 de abril de 2010 la Sra. Jessica Saldaña Torres (señora Saldaña Torres o parte peticionaria), sufrió una caída mientras trabajaba para su patrono. Ello, debido a alegados desniveles y roturas existentes en una acera pública del Municipio Autónomo de San Juan (el Municipio o parte recurrida). Como resultado de la caída, la peticionaria acudió a la CFSE para recibir tratamiento médico y demás beneficios. Luego del tratamiento correspondiente fue dada de alta con incapacidad. El Administrador de la CFSE emitió su decisión mediante Resolución notificada el 3 de octubre de 2011. Inconforme, la señora Saldaña Torres apeló el dictamen de la CFSE ante la Comisión Industrial. El 1 de abril de 2014 esta última confirmó el dictamen emitido por la CFSE. **El 1 de mayo de 2014**, transcurridos treinta días a partir de esa determinación, **esta advino final y firme.**

Así las cosas, **el 21 de mayo de 2015**, la señora Saldaña Torres, su esposo el Sr. Iván Román García (señor

Román García) y la Sociedad Legal de Bienes Gananciales compuesta por ambos, presentaron una demanda de daños y perjuicios al amparo del Art. 1802 del Código Civil de Puerto Rico, contra el Municipio y otros.[1] En esencia, alegaron que la peticionaria sufrió una aparatosa caída por causa de los desniveles y roturas existentes en una acera ubicada en la calle Lamar Guerra de Hato Rey.

El 22 de julio de 2015 el Municipio presentó una moción de desestimación. Alegó que la demanda estaba prescrita por lo que no se justificaba la concesión de un remedio. Adujo que la determinación de la CFSE se dictó el 1 de abril de 2014 -en la cual se confirmó la determinación del Administrador- por lo que el término prescriptivo para presentar su causa de acción venció el 1 de abril de 2015.[2] Añadió que, en cuanto a los codemandantes el señor Román García y la Sociedad Legal de Bienes Gananciales, compuesta por este y la peticionaria, el término comenzó a transcurrir desde que los peticionarios advinieron en conocimiento del accidente a tenor con la teoría cognoscitiva del daño.[3]

Por su parte, la parte peticionaria se opuso a la desestimación. Sostuvo que a partir del 1 de mayo de 2014, si ella decidía no apelar la decisión de la CFSE en

---

[1] 31 LPRA sec. 5141.
[2] *Moción en solicitud de desestimación*, Apéndice de la Petición de *certiorari*, págs. 5-18.
[3] *Íd.*

treinta días, esta advenía final y firme.[4] Indicó que desde ese momento la CFSE tenía noventa días para presentar la acción de subrogación. Planteó que el término para subrogarse venció el 30 de julio de 2014. Por lo tanto, arguyó que tenía hasta el 31 de julio de 2015 para presentar su causa de acción.[5] Sostuvo que como la demanda se presentó el 21 de mayo de 2015 no estaba prescrita.

Luego de varios trámites procesales, el 23 de septiembre de 2015, el Tribunal de Primera Instancia notificó una sentencia sumaria. Concluyó que la acción estaba prescrita por lo que desestimó la demanda incoada por la peticionaria. Razonó que el término prescriptivo para presentar la acción en daños y perjuicios comenzó a transcurrir a partir del 1 de mayo de 2014, fecha en que advino final y firme el dictamen emitido por el Administrador del Fondo. En consecuencia, entendió que la peticionaria tenía hasta el 1 de mayo de 2015 para incoar su acción.

Inconforme con ese dictamen, el 6 de octubre de 2015 la señora Saldaña Torres presentó una *Moción de determinaciones adicionales y Moción de reconsideración.* En esta añadió que el término de un año de prescripción de una acción independiente por daños contra un tercero responsable de un accidente de trabajo se contará desde el

---

[4] *Réplica y oposición a moción de desestimación Solicitud de sentencia sumaria parcial*, Apéndice de la Petición de *certiorari*, págs. 20-22.
[5] *Íd.*

día en que se pudo ejercitar la acción. Entendió que, como el lesionado no puede iniciar su causa de acción sino hasta después de los noventa días a partir de la fecha en que la Resolución del Administrador del Fondo fuere firme y ejecutoria, el término de un año debe comenzar transcurridos los noventa días.[6]

El Municipio se opuso a la referida moción y planteó que dicho término no se interrumpe porque exista el derecho de subrogación ya que ese derecho se concede para que la entidad pueda recobrar los gastos incurridos en el obrero lesionado. Expresó que "si bien dicha parte tenía que aguardar noventa (90) días para que la CFSE se subrogara en sus derechos, ello no impedía que incoara su acción dentro del término dispuesto por el Código Civil".[7]

El Tribunal de Primera Instancia declaró *no ha lugar* a la moción de reconsideración. En desacuerdo con este proceder, la parte peticionaria presentó un recurso de apelación ante el Tribunal de Apelaciones. Dicho foro confirmó el dictamen del foro primario. No conteste aún, la señora Saldaña Torres acudió ante nos mediante recurso de apelación. En esencia reiteró los planteamientos esgrimidos ante los foros inferiores. Argumentó, además, que el foro apelativo intermedio erró al emitir una sentencia que estaba en conflicto con otras sentencias

---

[6] *Moción solicitando determinaciones de hechos adicionales de hechos y moción de reconsideración*, Apéndice de la Petición de *certiorari*, págs. 44-50.

[7] *Oposición Moción de determinaciones adicionales y Moción de reconsideración*, Apéndice de la Petición de *certiorari*, págs. 51-52.

emitidas en por lo menos tres casos apelados en ese foro. Por su parte, el Municipio reiteró su postura en que la peticionaria no presentó su acción dentro del término prescriptivo para ello por lo que procedía desestimar contra ella y los demás codemandantes puesto que la acción está prescrita.

Acogida la apelación y contando con la comparecencia de ambas partes procedemos a resolver.

## II

### A

La prescripción es una figura jurídica de índole sustantivo que constituye una de las formas de extinción de algún derecho debido a la inercia en ejercer una causa de acción durante un tiempo determinado.[8] A través de la prescripción nuestro ordenamiento promueve que las reclamaciones se insten de manera oportuna y que las personas ejerciten sus causas de acción diligentemente.[9] Esta regula el tiempo que posee una parte para reclamar y hacer valer un derecho frente a un deudor.[10] De igual manera, responde a una política pública que persigue la solución rápida de las reclamaciones para castigar la inercia de la parte que no hace el reclamo dentro del término que concede la ley.[11]

---

[8] *Maldonado Rivera v. Suárez y otros*, 195 DPR 182, 192 (2016).
[9] *Íd.*
[10] *Meléndez Rivera v. CFSE*, 195 DPR 300, 309 (2016).
[11] *Íd.*

El Código Civil de Puerto Rico dispone que el punto de partida para computar el término prescriptivo de una acción en daños y perjuicios es la fecha en que el agraviado supo del daño y pudo ejercitar su acción.[12] Es decir, dicho término comienza a transcurrir no cuando se sufre el daño, sino cuando se conocen todos los elementos para incoar la reclamación.[13] Si no se insta la reclamación por la falta de diligencia del interesado, estas consideraciones liberales de la prescripción no son de aplicación.[14] Por su parte, el Art. 1868 del Código Civil establece que el término prescriptivo para instar la acción para exigir la responsabilidad civil por las obligaciones derivadas de la culpa o negligencia de que se trata el Art. 1802 es de un año desde que lo supo el agraviado.[15]

**B**

La Carta de Derechos de la Constitución de Puerto Rico, establece que todo trabajador tiene el derecho de estar protegido contra riesgos a su salud en su trabajo o empleo.[16] De igual manera la *Ley del Sistema de Compensaciones por Accidentes del Trabajo* (Ley Núm. 45) provee para los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos, un remedio económico y médico

---

[12] 31 LPRA sec. 5141.
[13] *Padín v. Cía. Fom. Ind.*, 150 DPR 403, 411 (2000).
[14] *Íd.*
[15] 31 LPRA sec. 5298.
[16] Art. II, sec. 16, Const. PR, LPRA, Tomo 1.

para compensar la incapacidad productiva que sobreviene como consecuencia de un accidente o enfermedad ocupacional.[17]

Este estatuto de carácter remedial tiene como política pública y norma general que el patrono posee inmunidad contra acciones de daños y perjuicios por accidentes laborales, siempre y cuando sea uno asegurado, es decir, que haya cumplido con las disposiciones de la ley concernida.[18] No obstante, a modo de excepción, si el patrono no es asegurado -por no haber cumplido con las disposiciones de la Ley- el obrero perjudicado o sus beneficiarios podrán proceder contra el patrono presentando una petición de compensación ante la Comisión, y reclamar al patrono los daños y perjuicios resultantes del accidente en el trabajo mediante una acción civil.[19]

De ordinario, la Ley Núm. 45, *supra*, no provee para que el obrero lesionado reembolse a la CFSE los gastos de tratamiento médico y compensación en los que incurrió si el accidente está relacionado con el empleo. Le corresponde al Fondo asumir la responsabilidad de ofrecer tratamiento médico y compensar al obrero sin derecho a reembolso alguno, según dispone la Ley.[20]

---

[17] *Padín v. Cía. Fom. Ind.*, *supra*. Véanse, además, *Ortiz Pérez v. FSE*, 137 DPR 367 (1994); *Morell Morell v. Comisión Industrial de PR*, 110 DPR 709 (1981).
[18] 11 LPRA sec. 1(a).
[19] *Íd.*, sec. 16(2). Véase, además, *Marrero v. Caribbean Hosp. Corp. et al.,* 156 DPR 327, 332 (2002).
[20] *Sevilla v. Municipio de Toa Alta*, 159 DPR 684, 690 (2003).

Sin embargo, el estatuto establece que en aquellos casos en los que la lesión, enfermedad o muerte sufrida por el empleado en su lugar de trabajo sea imputable a un tercero, tanto el obrero lesionado como el Administrador de la CFSE -subrogándose en los derechos del obrero por los servicios pagados- podrán reclamarle judicialmente a ese tercero responsable.[21] En otras palabras, el Fondo tiene derecho a recobrar, mediante la acción de subrogación, los daños que compensó o los gastos en los que incurrió en el tratamiento del obrero, relacionados al accidente de trabajo.[22]

Específicamente, el Art. 29 de la Ley Núm. 45, *supra*, dispone lo siguiente:

> En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte **dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero,** empleado o sus beneficiarios para entablar la misma acción en la forma siguiente:
>
> **Cuando un obrero o empleado lesionado, o sus beneficiarios en casos de muerte, tuvieren derecho a entablar acción por daños contra tercero,** en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de este capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, **el Administrador del Fondo**

---

[21] *Íd.; Padín v. Cía. Fom. Ind.,* supra, pág. 412; *Ortiz Pérez v. FSE,* supra; *Santiago Hodge v. Parke Davis, Co.,* supra.

[22] Véase *Padín v. Cía. Fom. Ind.,* supra, pág. 412.

**del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado**, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma. **El obrero o empleado o sus beneficiarios serán parte en todo procedimiento que estableciere el Administrador** bajo las disposiciones de esta sección, y será obligación del Administrador notificar por escrito a las mismas de tal procedimiento dentro de los cinco (5) días de iniciada la acción.

Si el Administrador dejare de entablar demanda contra la tercera persona responsable, según se ha expresado en el párrafo anterior, el obrero o empleado, o sus beneficiarios quedarán en libertad completa para entablar tal demanda en su beneficio, sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso.

El obrero o empleado lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria.[23]

En *Negrón v. Comisión Industrial*, 76 DPR 301 (1954), tuvimos la oportunidad de interpretar esta disposición. Allí dijimos que el término prescriptivo que tiene el obrero para presentar la referida acción es de un año a partir de la fecha en que fuere firme la resolución del Administrador. También señalamos que el obrero, empleado

---

[23] 11 LPRA sec. 32. (Énfasis nuestro). Cabe destacar que la Ley Núm. 63 del 1 de julio de 1996 reenumeró los artículos de la Ley Núm. 45, *supra*, por lo que el Art. 31 pasó a ser el Art. 29 de la Ley Núm. 45, *supra*. Nótese, que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones utilizaron la enumeración original.

lesionado o sus beneficiarios no pueden "radicar demanda alguna contra la tercera persona responsable de los daños hasta después de transcurridos noventa días a partir de la resolución del caso por el Administrador del Fondo del Seguro del Estado **y antes de vencerse el año subsiguiente a tal resolución**".[24] A tales efectos, "una acción presentada por un obrero lesionado que ha acudido al Fondo antes de que transcurran los noventa días de ser firme la decisión del Administrador del Fondo es prematura".[25] La omisión por el Administrador de presentar una demanda dentro del término de noventa días después de su resolución final conlleva una renuncia de su derecho de subrogación.[26]

Explicamos que el propósito del legislador, al enmendar el Art. 31 mediante la Ley Núm. 16 de 12 de abril de 1948, fue establecer un procedimiento para los casos en que el causante del daño fuese un tercero. Dijimos que para presentar una reclamación judicial el obrero debía esperar hasta que el Administrador dictara una resolución final, ya que la ley concede a este la **primera oportunidad** para acudir a los tribunales dentro del mencionado término de noventa días.

Más tarde, en *Tropigas de P.R. v. Tribunal Superior*, 102 DPR 630, 638 (1974), reafirmamos lo dicho. Así,

---

[24] *Negrón v. Comisión Industrial*, 76 DPR 301, 306 (1954).
[25] *Padín v. Cía. Fom. Ind.*, supra, pág. 412. Véanse, además, *Alvarado v. Calaíño Romero*, 104 DPR 127 (1975); *Gallart Mendía v. González Marrero*, 95 DPR 201 (1967); *Negrón v. Comisión Industrial*, supra.
[26] *Negrón v. Comisión Industrial*, supra, pág. 308.

resolvimos que un obrero lesionado "no pu[ede] ejercitar su causa de acción mediante la presentación de demanda hasta pasados 90 días de ser firme la decisión que rindiera el Administrador del Fondo del Seguro del Estado. ... [El Art. 31] establece como período prescriptivo de la acción que tenía el obrero para reclamar por sus propios daños y perjuicios, el de un año a partir de la fecha en que fuere firme la resolución del Administrador".[27]

Posteriormente, en *El Día, Inc. v. Tribunal Superior*, 104 DPR 149, 151 (1975), resolvimos que en los casos en que ocurra una lesión o muerte, el término prescriptivo de un año para que un obrero o empleado lesionado pueda instar una reclamación en daños y perjuicios contra el tercero responsable queda suspendido durante el proceso de adjudicación ante la CFSE y la Comisión Industrial. Es decir, que el término prescriptivo de un año no comienza a transcurrir hasta que el Administrador del Fondo emita su resolución y esta advenga final y firme. En otras palabras, al agraviado se le reconoce su causa de acción en daños y perjuicios, no desde que supo del daño sino desde que el Administrador adjudique finalmente el asunto, dicte la resolución final y esta adquiera firmeza.

Cabe destacar que la subrogación es la figura jurídica por la cual una compañía de seguros sustituye a su asegurado en el ejercicio de las acciones o los

---

[27] *Padín v. Cía. Fom. Ind.*, *supra*, págs. 412-413. El Art. 31 al que se refiere constituye la numeración original de la Ley Núm. 45, previo a la enmienda y renumeración realizada en 1996.

derechos que este tiene contra los causantes de un daño.[28] En estos casos mediante el derecho de subrogación, "la compañía aseguradora se pone en la misma posición de éste con relación a todas las acciones y remedios a los cuales tiene derecho" al resarcirlo económicamente.[29] Así, hemos señalado que "[n]uestra jurisprudencia está acorde con la doctrina civilista, en cuanto establece que el efecto principal de la subrogación es que el nuevo acreedor se coloca en la 'misma situación jurídica que se encontraba el acreedor respecto al deudor'".[30]

## C

Sabido es que, como últimos intérpretes de la ley, tenemos la obligación de armonizar hasta donde sea posible sus disposiciones. Ello con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador.[31] Es un principio cardinal de interpretación estatutaria el que al lenguaje de la ley debe dársele el significado que valide el propósito que tuvo el legislador al aprobarla.[32]

Así, reiteradamente hemos expresado que al interpretar una disposición estatutaria debemos considerar que sus disposiciones, párrafos u oraciones no deben

---

[28] *CSMPR v. Carlo Marrero*, 182 DPR 411, 417 (2011).
[29] *Íd.*
[30] *Íd.* pág. 419.
[31] *Sucn. Rosado v. Acevedo Marrero*, 2016 TSPR 236, 196 DPR __ (2016); *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Suc. Álvarez v. Srio. De Justicia*, 150 DPR 252, 276 (2000).
[32] 31 LPRA sec. 18. Véase, además, R. Elfren y otros, *Aprobación e interpretación de las leyes de Puerto Rico*, 2da ed. rev., San Juan, Publicaciones JTS, Inc., 1987, pág. 245.

tomarse aisladamente, sino que hay que considerar todo su contexto.[33] De manera que no está dentro de las facultades de los tribunales modificar, enmendar o alterar la ley mediante legislación judicial ni añadir por implicación lo que claramente no fue la intención del legislador.[34]

Como regla general, si no existe margen de duda en cuanto al texto de la ley este prevalece sobre su acepción.[35] A tales efectos, el Art. 14 del Código Civil, dispone que "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".[36] A tenor con lo antes expuesto, procedemos a examinar las disposiciones pertinentes de la Ley Núm. 45, *supra*. Veamos.

### III

En este caso existe una discrepancia sobre cómo debe computarse el término prescriptivo que tiene un obrero o empleado lesionado para presentar una demanda de daños y perjuicios contra un tercero responsable cuando el primero se acoge a los beneficios de la CFSE, en aquellas instancias en que el Administrador de la agencia decide o no subrogarse en los derechos del obrero, empleado o sus beneficiarios mediante la acción de subrogación.

---

[33] Véanse *Morales v. Marengo*, 181 DPR 852 (2011); *Soc. Asist. Leg. v. Ciencias Forenses*, 179 DPR 849 (2010); *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657 (2009).
[34] *Depto de Estado v. U.G.T.*, 173 DPR 93, 110 (2008).
[35] *CIC Const v. JMSP-UPR*, 2016 TSPR 240, 196 DPR __ (2016); *Spyder Media, Inc. v. Municipio Autónomo de San Juan*, 194 DPR 547 (2016); *Doble Seis Sport v. Depto. Hacienda*, 190 DPR 763 (2014).
[36] 31 LPRA sec. 14.

La señora Saldaña Torres, su esposo y la Sociedad Legal de Bienes Gananciales compuesta por ambos alegaron que a partir del 1 de mayo de 2014, fecha en que la Resolución del Administrador advino final y firme, la CFSE tenía noventa días para presentar la acción de subrogación. Plantearon que, como el término para subrogarse venció el 30 de julio de 2014, desde el próximo día comenzaba a transcurrir el periodo de un año para presentar su causa de acción.

El 21 de mayo de 2015 estos presentaron una demanda de daños y perjuicios contra el Municipio al amparo del Art. 1802 del Código Civil de Puerto Rico. Sostuvieron que la demanda se presentó dentro del término prescriptivo y a más de cuatro meses antes de vencer este, por lo tanto esta no está prescrita.

Por su parte, el Municipio adujo que el período prescriptivo de un año que tiene el obrero para presentar su causa de acción en daños y perjuicios comienza una vez transcurren los treinta días de dictada la Resolución del Administrador de la CFSE. Aunque reconoce que, luego de esos treinta días, el obrero debe esperar el término de noventa días que tiene el Administrador del Fondo para decidir si insta la acción de subrogación, aduce que este debe incoar el pleito contra tercero antes de vencerse el año subsiguiente de esa decisión. En otras palabras, el empleado o el obrero lesionado debe esperar un total de

ciento veinte días a partir de la decisión del Administrador de la CFSE para hacer un reclamo al tercero. Tiene razón.

Al analizar esos hechos a la luz de la norma discutida, surge de esta disposición estatutaria que:

> [e]l obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte **dentro del año subsiguiente** a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado [...]

Más adelante el estatuto señala que en estos casos el Administrador del Fondo se subrogará en los derechos del obrero o empleado o sus beneficiarios para recuperar los gastos incurridos, así como en cualquier cantidad en exceso a la que estos tengan derecho. El Art. 29, *supra*, añade que si el Administrador no presenta su causa de acción, el obrero o empleado lesionado o sus beneficiarios quedarán en libertad completa para entablar una demanda. No obstante, esta acción deberán presentarla "después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria".[37] Es decir, el estatuto expresamente inhabilita al obrero a presentar su causa de acción hasta tanto el Administrador del Fondo emita su decisión final y decida si ejerce o no la acción de subrogación para recobrar los gastos en los que incurrió.

---

[37] 11 LPRA sec. 1 *et seq*.

Es menester enfatizar que cuando el Administrador presenta la acción de subrogación no promueve una transacción judicial a su favor, pues esta no le pertenece sino al obrero lesionado o a sus beneficiarios.[38] Precisamente es por ello que la Asamblea Legislativa estableció como requisito indispensable que éstos últimos formaran parte de todo procedimiento que el Administrador instara contra el tercero responsable.

Cónsono con lo enunciado y siguiendo las pautas establecidas por nuestra jurisprudencia, colegimos que un obrero o empleado lesionado tiene un término prescriptivo de un año para instar la causa de acción por daños y perjuicios contra un tercero responsable desde que la resolución del Administrador del Fondo adviene final y firme. No obstante, como señalamos antes, el Administrador de dicha agencia tiene noventa días para ejercer su prerrogativa de instar la acción de subrogación correspondiente. **Es luego de ese término y antes de vencerse el año -desde la resolución final y firme del Administrador- que un obrero o empleado lesionado puede instar su causa de acción contra el tercero responsable.**

Surge del expediente que la Resolución del Administrador de la CFSE advino final y firme el 1 de mayo de 2014. A partir de ese momento, la ley concedió al Administrador del Fondo la opción de subrogarse en los

---

[38] *Gallart, Admor. v. Banco Popular*, 91 DPR 818, 826-827 (1965).

derechos del obrero para acudir al tribunal dentro del término de noventa días y reclamar la suma que este satisfizo como indemnización. Dentro de ese periodo la parte peticionaria, a pesar de que no podía ejercitar su causa de acción y presentar una demanda en daños y perjuicios contra el tercero responsable, podía formar parte de todo el procedimiento que instara el Administrador, conforme lo establece la Ley en el Art. 29, *supra*. Ello, pues el estatuto en cuestión dispone que "el obrero o empleado o sus beneficiarios **serán parte en todo el procedimiento que estableciere el Administrador bajo las disposiciones de este Artículo,** y será obligación del Administrador notificar por escrito a las mismas de tal procedimiento dentro de los cinco (5) días de iniciada la acción".[39]

Tal y como sostuvo el Tribunal de Apelaciones, la Ley Núm. 45, *supra*, expresamente dispone que el término que tiene un obrero lesionado para presentar su reclamación por daños en contra de un tercero es de un año luego de que la determinación del Administrador es firme y ejecutoria. En este sentido, los primeros noventa días **están incluidos** dentro del término prescriptivo de un año, aunque han sido reservados para que el Administrador presente la acción de subrogación -en nombre del obrero- y

---

[39] 11 LPRA sec. 32.

pueda recobrar los fondos invertidos en el tratamiento y compensación brindados a este.

Nótese, que la Resolución del Administrador advino final y firme el **1 de mayo de 2014**. La parte peticionaria tenía hasta el **1 de mayo de 2015** para instar su causa de acción contra el tercero responsable. No obstante, presentó la demanda el 21 de mayo de 2015. Por lo tanto, es forzoso concluir que la demanda de epígrafe **está prescrita**.

## IV

Por los fundamentos antes expuestos, se confirma la determinación del Tribunal de Apelaciones.

Se dicta sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jessica Saldaña Torres y
otros

Peticionarios

v.                                    AC-2016-0070

Municipio Autónomo de San
Juan y otros

Recurridos

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de agosto de 2017.

Por los fundamentos antes expuestos, se confirma la sentencia dictada por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaría del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente a la que se unió la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez está inhibida.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jessica Saldaña Torres y otros

      Peticionaria

      v.                 AC-2016-0070       Apelación

Municipio Autónomo de San Juan
y otros

      Recurridos

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ a la cual se unen la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ y el Juez Asociado SEÑOR COLÓN PÉREZ

San Juan, Puerto Rico, a 11 de agosto de 2017.

Por aplicarse de forma errónea el artículo 29 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, _infra_, disiento de la Opinión emitida por este Tribunal. Particularmente, hoy una Mayoría de este Tribunal decide, con una interpretación restrictiva, reducir a tan sólo nueve (9) meses el término de prescripción que tiene un obrero o sus beneficiarios para reclamar contra un tercero por los daños y perjuicios sufridos en el trabajo. Considero que debimos reafirmar la jurisprudencia interpretativa emitida por este

Tribunal y ejercer nuestro rol judicial acorde con las normas de hermenéutica establecidas para los casos laborales.

# I

Por estar detallada la situación fáctica en la Opinión mayoritaria, procedo a exponer los fundamentos que sustentan mi disenso.

En este caso, como bien reconocen las partes, la controversia se circunscribe a determinar lo siguiente: a partir de cuándo es que comienza a trascurrir el término de un año que tiene un obrero para presentar una demanda de daños y perjuicios contra un tercero, al amparo de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1948, según enmendada, 11 LPRA sec. 1 et seq. (Ley de Compensaciones). Específicamente, debíamos resolver esta interrogante con relación a aquellos supuestos en que el Administrador de la Corporación del Fondo del Seguro del Estado (Administrador del Fondo) decide no subrogarse en los derechos del obrero. Una Mayoría de este Tribunal decide, erróneamente, que los noventa (90) días que tiene el Administrador del Fondo para presentar una acción de subrogación, según el artículo 29, 11 LPRA sec. 32, están subsumidos en el término de un (1) año para que el obrero presente su reclamación en contra de un tercero demandado.

## A.

En primera instancia, debemos recordar que al interpretar la Ley de Compensaciones, _supra_, debemos hacerlo en armonía con la política pública que establece la propia ley. Y es que este estatuto tiene como fin el "acomodo justo y equitativo de los intereses de patronos y empleados, donde ambos reciben importantes beneficios **a cambio del libre ejercicio de sus derechos** o prerrogativas tradicionales". _Íd._, sec. 1a (énfasis suplido). Asimismo, hemos establecido que "[s]iendo la Ley de Compensaciones por Accidentes del Trabajo un estatuto con fines remediales, sus disposiciones deben ser interpretadas liberalmente". _Ortiz Pérez v. F.S.E._, 137 DPR 367, 373 (1994). _Véase, además_, _Morales v. Adm. Sistemas de Retiro_, 123 DPR 589, 595 (1989); _Sánchez v. A.S.R.E.G.J._, 116 DPR 372, 378 (1985); _Bruno Colón v. Comisión Industrial_, 109 DPR 785, 787 (1980). Ello concuerda con nuestros anteriores pronunciamientos donde expresamos que "[n]o podemos conferirle una interpretación tan restrictiva a un estatuto que, al igual que otras legislaciones laborales, tiene un carácter reparador, por lo que debe tomarse como un instrumento de justicia social". _Torres v. Gobierno de Coamo_, 170 DPR 541, 557 (2007). Igualmente, debemos recordar las reglas de hermenéutica que este Tribunal ha establecido con relación a las leyes laborales, a saber:

> En reiteradas ocasiones hemos expresado la regla de interpretación estatutaria aplicable a las leyes laborales, en cuanto a que deben interpretarse liberalmente, resolviéndose toda duda de la forma más favorable hacia el obrero, para así cumplir con sus propósitos

eminentemente sociales y reparadores. La interpretación liberal y abarcadora de estas leyes a favor de aquellos a quienes éstas intentan proteger es imperativa, de modo que dicha protección se extienda al mayor número de casos. Sánchez v. Sylvania Lighting, 167 DPR 247 (2006); Rodríguez v. Syntex, 160 DPR 364 (2003); Muñoz Hernández v. Policía de P.R., supra, pág. 496; R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes de Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, T. I, págs. 455-459. En González v. Adm. de Sistemas de Retiro, 113 DPR 292, 294 (1982), resolvimos que al interpretarse un estatuto de naturaleza reparadora, no es la letra de la ley, sino su espíritu, lo que determina su significado. Íd. págs. 557-558.

**B.**

Sabido es que la Ley de Compensaciones, supra, tiene como fin ser un estatuto reparador con el cual se crea un seguro obligatorio y exclusivo para compensar a los obreros o empleados que sufran lesiones, se inutilicen o mueran como consecuencia de un accidente ocurrido en el trabajo. Lebrón Bonilla v. ELA, 155 DPR 475, 481-482 (2001). Su propósito es dar "un remedio **rápido, eficiente y libre** de las complejidades de una reclamación ordinaria en daños". Pacheco Pietri v. ELA, 133 DPR 907, 914 (1993) (énfasis suplido). Para ello, se le otorga inmunidad al patrono frente a las acciones civiles de daños y perjuicios que pudiera presentar en su contra el obrero lesionado o sus beneficiarios. Martínez v. Bristol Myers, Inc., 147 DPR 383, 395 (1999).

Por otra parte, este estatuto permite que el obrero lesionado o sus beneficiarios puedan demandar a un tercero causante del accidente y obtener la

correspondiente compensación. Sin embargo, la ley establece un procedimiento en el cual, en forma prioritaria, la Corporación del Fondo del Seguro del Estado (Fondo) puede subrogarse en los derechos del obrero o sus beneficiarios para incoar una reclamación contra el tercero responsable de los daños relacionados al trabajo. De esa forma, pueden obtener los gastos incurridos en el tratamiento ofrecido por el Fondo. Particularmente, la ley dispone en su artículo 29, en lo pertinente, de la siguiente manera, a saber:

> Cuando un obrero o empleado lesionado, o sus beneficiarios en casos de muerte, tuvieren derecho a entablar acción por daños contra tercero, en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de este capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, el Administrador del Fondo del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma. El obrero o empleado o sus beneficiarios serán parte en todo procedimiento que estableciere el Administrador bajo las disposiciones de esta sección, y será obligación del Administrador notificar por escrito a las mismas de tal procedimiento dentro de los cinco (5) días de iniciada la acción.

> **Si el Administrador dejare de entablar demanda contra la tercera persona responsable, según se ha expresado en el párrafo anterior, el obrero o empleado, o sus beneficiarios quedarán en libertad completa para entablar tal demanda**

**en su beneficio, sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso.**

**El obrero o empleado lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria.** 11 LPRA sec. 32 (énfasis suplido).

Como bien señala la Opinión mayoritaria, este artículo ha sido interpretado por nosotros en varias ocasiones. Véase Negrón v. Comisión Industrial, 76 DPR 301 (1954); Tropigas PR v. Tribunal Superior, 102 DPR 630 (1974). No obstante lo anterior, una Mayoría de este Tribunal olvida lo afirmado en el precedente El Día, Inc. v. Tribunal Superior, 104 DPR 149 (1975). Nótese que éste no ha sido revocado, no es revocado por la Opinión mayoritaria, y más aún, es citado en ella con aprobación.[40] Específicamente, en ese caso expresamos lo

---

[40]Nótese además, que este precedente consecuentemente ha sido reconocido por el Tribunal de Apelaciones. Véanse Sánchez v. Municipio de San Juan, KLAN201001784 (Panel integrado por la Juez Pesante Martínez, el Juez Morales Rodríguez (Ponente) y la Juez Ortiz Flores); Villaman Capellán v. Gónzalez Trading Co., Inc., KLCE200800179 (Panel integrado por la Juez Bajandas Vélez (Ponente), el Juez Aponte Hernández y el Juez Morales Rodríguez); Rivera Arvelo v. Contech of Puerto Rico, KLAN051480 (Panel integrado por el Juez Arbona Lago, el Juez Miranda de Hostos y la Jueza Pabón Charneco (Ponente); Gómez Correa v. Honeywell, KLAN0400046 (Panel integrado por la Juez López Vilanova (Ponente), el Juez Córdova Arone y el Juez González Rivera); Hernández Normandía v. Dover Elevators, KLAN200200902 (Panel integrado por la Juez Rodríguez de Oronoz, la Juez Peñagarícano Soler (Ponente)

opuesto a lo que hoy se resuelve por una Mayoría de este Tribunal. Resolvimos que en el caso específico de un obrero lesionado, el término prescriptivo de un (1) año para presentar la acción no queda suspendido para los daños de los familiares, por no resultar beneficiarios. Véase H.M. Brau del Toro, Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones JTS, 1986, Vol. II, págs. 947-948. Para fundamentar tal determinación establecimos, en lo pertinente, lo siguiente:

> Conforme lo dispuesto en el Art. [29] de la Ley Núm. 45 del 18 de abril de 1935, según enmendada --Ley de Compensaciones por Accidentes del Trabajo --el término de un (1) año de prescripción de una acción independiente por daños contra un tercero responsable **no comienza a correr para el lesionado o sus beneficiarios '... hasta después de transcurridos noventa días a partir de la fecha en que la Resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria'**. El Día, Inc. v. Tribunal Superior, supra, págs. 150-151 (citando a Gallart Mendía v. González Marrero, 95 DPR 201, 205 (1967)(énfasis suplido) (citas omitidas).

Lo anterior se reafirmó en Franco v. Mayagüez Building, Inc., 108 DPR 192, 195 (1978), en donde señalamos que la Ley de Compensaciones, supra, extendió

y la Juez Bajandas Vélez); Martínez Pereira v. Autoridad de Edificios Públicos, KLAN200100968 (Panel integrado por la Juez Pesante Martínez, el Juez Rodríguez García (Ponente) y el Juez Salas Soler); García Ortiz v. Municipio de Humacao, KLAN200200043 (Panel integrado por la Juez Pesante Martínez, el Juez Rodríguez García (Ponente) y el Juez Salas Soler).

el término prescriptivo para dar tiempo al Administrador del Fondo a subrogarse, si así lo desea. Así también en Rivera de Vincenti v. ELA lo ratificamos al mencionar que "la acción subrogatoria provista por el Art. [29] de la Ley de Compensaciones por Accidentes del Trabajo **suspende** para el obrero y sus beneficiarios, el término prescriptivo de la acción de daños y perjuicios del Art. 1868 (2) del Código Civil". Rivera de Vincenti v. ELA, 108 DPR 64, 70 (1978) (énfasis suplido). Ello lo confirma Brau del Toro al indicar que:

> Si el Fondo no instase acción contra el tercero durante el referido periodo de 90 días, el obrero lesionado, o sus herederos en su caso, podrá repetir contra el tercero dentro del término de un año **que comienza a contar después de transcurrido 90 días a partir de la fecha en que la resolución del Administrador del Fondo o de la Comisión Industrial, en su caso, advino final y firme**. Brau del Toro, op. cit., pág. 936 (énfasis suplido).

Asimismo, Brau del Toro señala, en cuanto a la sociedad de bienes gananciales, lo siguiente:

> Por tanto, al quedar estatutariamente **interrumpida la facultad de un obrero lesionado para ejercer su causa de acción por los daños personales sufridos en un accidente del trabajo—** en lo que el Administrador del Fondo decide si ha de instar acción de subrogación en su representación y en su favor— podría argüirse que la sociedad de gananciales de la que el lesionado forma parte, y en la que tiene un legítimo interés, puede posponer el ejercicio de su causa de acción hasta que se produzca la determinación del Administrador del Fondo, ya que como fue reconocido en *Gallart, Admor. v. Banco Popular, supra*, éste puede ejercitar su acción por subrogación, no sólo para beneficio

del obrero lesionado por sus daños personales, sino también para beneficio de la sociedad de gananciales constituida por el obrero lesionado y su cónyuge. En tal caso, **si finalmente el Administrador decidiese no subrogarse, el término prescriptivo de la acción de la sociedad de gananciales comenzaría a correr 90 días después que la determinación del Administrador, o de la Comisión industrial en su caso, adviniese final y firme, tal como ocurre con la causa de acción personal del obrero lesionado.** Íd., pág. 953 (énfasis suplido).

Al examinar con detenimiento la ley, la jurisprudencia, las normas de hermenéutica y los tratadistas, debemos concluir que el término prescriptivo en controversia comienza una vez transcurridos los noventa (90) días que tiene el Fondo para presentar la acción en subrogación. La Ley de Compensaciones, supra, es clara al afirmar que cuando el Administrador del Fondo no presenta la demanda en subrogación, "el obrero o empleado, o sus beneficiarios **quedarán en libertad completa para entablar tal demanda en su beneficio,** sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso". 11 LPRA sec. 32 (énfasis suplido). Asimismo, menciona que:

El obrero o empleado lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria. Íd.

En ese sentido, la ley inhabilita al obrero o sus beneficiarios a presentar su acción durante un tiempo determinado. Así lo reconoce la Mayoría de este Tribunal al indicar que "el estatuto expresamente inhabilita al obrero a presentar su causa de acción hasta tanto el Administrador del Fondo emita su decisión final y decida si ejerce o no la acción de subrogación para recobrar los gastos en los que incurrió". Opinión mayoritaria, pág. 16. No obstante, deciden la anomalía de que un término de prescripción transcurre a pesar que el legitimado no puede ejercer la acción durante ese tiempo. En consecuencia, acortan a sólo nueve (9) meses el término prescriptivo, es decir, el tiempo que tiene el obrero para reclamar sus derechos. Ello, en contravención con el principio básico de que "el verdadero punto de partida para el inicio del término prescriptivo de una acción de daños y perjuicios es la fecha en que el agraviado supo del daño y *pudo ejercitar su acción*". Vera v. Dr. Bravo, 161 DPR 308, 327 (2004).

Además, no podemos desvirtuar ni obviar que el propósito de los noventa (90) días que establece la ley para que el Fondo pueda presentar su causa de subrogación, es para dar tiempo al Administrador del Fondo a decidir si desea subrogarse en los derechos del obrero lesionado y demandar al tercero causante del daño. Es por ello que este Tribunal concluyó en El Día, Inc. v. Tribunal Superior, supra, que el término de prescripción de la acción independiente contra el tercero responsable no comienza a decursar para el accidentado hasta

transcurrido el plazo de noventa (90) días a partir de la fecha de la resolución del Administrador del Fondo. Esa normativa debió mantenerse e imperar. Ello es así, ya que el estatuto señala expresamente que después del término de noventa (90) días, es que el obrero tendrá libertad completa para presentar su demanda. A su vez, este Tribunal ha reconocido "*sin excepción alguna* que de la indemnización que se obtenga de la acción que incoe el Fondo se resarcirán primero todos los desembolsos *que este haya realizado* con respecto al empleado lesionado, y entonces el *sobrante* corresponderá al empleado o a sus familiares". <u>Sevilla v. Municipio Toa Alta</u>, 159 DPR 684, 692 (2003). Por tanto, la acción de subrogación ejercitada por el Fondo tiene como fin primordial recuperar los gastos incurridos y los beneficios que puedan obtener el obrero o sus beneficiarios, si alguno, pasan a un segundo plano. Eso lo confirman las siguientes expresiones de este Tribunal:

> [El Fondo] *siempre* tiene un derecho *prioritario* al reembolso *de todo* lo que haya gastado en la atención médica y en la compensación del empleado lesionado. El derecho del empleado o de sus familiares cuando un tercero es de algún modo responsable de sus daños **es sólo al sobrante** que haya luego de que el Fondo demandante se haya resarcido de todos los desembolsos realizados en beneficio del empleado lesionado. <u>Íd.</u> págs. 692-693 (énfasis suplido).

A raíz de las expresiones anteriores que este Tribunal ha realizado, ¿qué sentido lógico tiene el resolver que "los primeros noventa días están incluidos

dentro del término prescriptivo de un año, aunque han sido reservados para que el Administrador presente la acción de subrogación […] y pueda recobrar los fondos invertidos en el tratamiento y compensación brindados a este"? Opinión mayorítaria, págs. 18-19. Es decir, ¿cómo se pueden descontar los noventa días del término prescriptivo de un año que tiene derecho el obrero, si la acción del Fondo es para, prioritariamente, reembolsar el dinero que gastaron y no con el fin primordial de beneficiar al obrero?

## III

Según la normativa discutida, en este caso los apelantes estaban impedidos de presentar la demanda hasta después de transcurridos los noventa (90) días de que adviniera firme la determinación del Administrador del Fondo. La referida decisión fue emitida el 3 de octubre de 2011. A su vez, la Comisión Industrial la confirmó el 1 de abril de 2014. Por consiguiente, advino firme el 1 de mayo de 2014. A partir de esa fecha, los apelantes debían esperar los noventa (90) días que establece la Ley de Compensaciones, supra, y de ahí tendrían un (1) año para presentar su demanda. Es decir, debían esperar hasta el 31 de julio de 2014, fecha en la cual podrían presentar su acción, y desde la cual comenzaría a transcurrir el año. Los apelantes presentaron su demanda en el Tribunal de Primera Instancia el 21 de mayo de 2015, por lo que fue instada dentro del término de prescripción de un año.

Por todo lo expuesto, disiento y concluyo que los apelantes presentaron su demanda a tiempo. No obstante, la decisión que hoy emite una Mayoría de este Tribunal resulta preocupante, ya que reducen el término que tienen los obreros lesionados y sus beneficiarios para ejercer efectivamente sus derechos. Al resolver como lo hacen, incorporan una excepción a la normativa de los términos prescriptivos sin base en el texto de la ley, contrario a nuestra jurisprudencia, en contravención al propósito legislativo y creando una anómala situación de desigualdad. Adviértase que desde hoy se crea el fatal precedente de que un término de prescripción transcurre a pesar de que el legitimado no puede ejercer la acción durante ese tiempo. No puedo estar de acuerdo con ese razonamiento.

## IV

Por los fundamentos que anteceden, disiento del curso de acción seguido por una Mayoría de este Tribunal. En su lugar, revocaría al Tribunal de Apelaciones y hubiera determinado que la demanda de epígrafe fue presentada oportunamente.

Luis F. Estrella Martínez
Juez Asociado